Susan Krumplitsch (SBN 241016)
**DLA PIPER LLP (US)**
2000 University Avenue
East Palo Alto, CA 94303
Telephone: (650) 833-2000
susan.krumplitsch@us.dlapiper.com

Ellen Scordino (*pro hac vice* forthcoming)
**DLA PIPER LLP (US)**
33 Arch Street, 26th Floor
Boston, MA 02110
Telephone: (617) 406-6000
ellen.scordino@us.dlapiper.com

Stephanie Piper (*pro hac vice* forthcoming)
**DLA PIPER LLP (US)**
1251 Avenue of the Americas
New York, NY 10020
Telephone: (212) 335-4500
stephanie.piper@us.dlapiper.com

Nancy J. Gettel (SBN 277332) (admission forthcoming)
**FibroGen, Inc.**
409 Illinois St.
San Francisco, CA 94158
Telephone: (415) 978-1200
ngettel@fibrogen.com

*Counsel for Plaintiff*
*FibroGen, Inc.*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FIBROGEN, INC.,<br><br>Plaintiff,<br><br>vs.<br><br>HANGZHOU ANDAO PHARMACEUTICAL LTD.; KIND PHARMACEUTICALS LLC; DR. DONG LIU; and DR. SHAOJIANG DENG,<br><br>Defendants. | Case No.<br><br>**COMPLAINT—PUBLIC VERSION**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff FIBROGEN, INC. ("FibroGen"), through its undersigned attorneys, as and for its Complaint against Defendants HANGZHOU ANDAO PHARMACEUTICAL LTD., KIND PHARMACEUTICALS LLC, (collectively, "Kind"), DR. DONG LIU, and DR. SHAOJIANG DENG, (collectively, "Defendants"), respectfully alleges, upon knowledge and upon information and belief, as follows:

## NATURE OF THE ACTION

1.      FibroGen brings this action to stop Defendants' unlawful use of FibroGen proprietary information, and to seek the return of its intellectual property, as well as compensation for these acts.  The misuse of FibroGen's intellectual property, including proprietary FibroGen compounds, is inextricably tied to Defendants DR. DONG LIU ("Liu") and DR. SHAOJIANG DENG ("Deng").  Both Liu and Deng are former FibroGen employees, where they worked as scientists for years and had access to FibroGen's confidential information.  Under their employment agreements, Liu and Deng must maintain and protect FibroGen confidential information while assigning all inventions to FibroGen.  Prior to departing FibroGen, Liu founded Kind, a company that uses the same technology to compete directly with FibroGen.  Deng left FibroGen several years later to join Kind, where he took on a leadership role at the company. Instead of complying with the obligations in their employment agreements, Liu and Deng used FibroGen's proprietary information and intellectual property to jumpstart Kind's business.  As part of their scheme to leverage FibroGen confidential information, Defendants filed a series of patent applications claiming FibroGen compounds without FibroGen's knowledge or consent. These patent filings list the incorrect inventors, omit the FibroGen scientists who invented the compounds, and are wrongly assigned to Kind, not FibroGen.

2.      FibroGen is a leading biopharmaceutical company that develops and commercializes first-in-class therapeutics. By applying its pioneering expertise in hypoxia-

inducible factor ("HIF") biology, including in collaboration with Nobel Prize winner Dr. William Kaelin, Jr, FibroGen has advanced innovative medicines for the treatment of anemia.  FibroGen markets roxadustat—an oral small molecule inhibitor of HIF prolyl hydroxylase used to treat anemia in patients with chronic kidney disease—in China, Europe, Japan, and other countries. FibroGen also has a pipeline of late-stage clinical programs and preclinical drug candidates at various stages of development that include both small molecules and biologics. FibroGen has leveraged its internally developed 2-oxoglutarate and connective tissue growth factor biology expertise as well as in-licensing additional programs to further enhance its late-stage preclinical pipeline.

3.    FibroGen's goal is to build a diversified pipeline of novel drugs to address unmet patient needs in oncology, immunology, and fibrosis. Building and pursuing a robust pipeline with cutting-edge science requires significant trial and error, and often years of development before yielding a scientifically and commercially viable solution.

4.    One of FibroGen's programs focuses on hypoxia-inducible factor prolyl hydroxylase enzyme inhibitors ("HIF-PHIs" or "the compounds of interest") for the treatment of anemia and other conditions.  FibroGen invented a number of proprietary HIF-PHI compounds including ███████████████████████████ (collectively, "FibroGen's proprietary HIF-PHI compounds"). Scientists at FibroGen developed these particular proprietary HIF-PHI compounds at least as early as ████.

5.    FibroGen has devoted thousands of hours of medicinal chemists' and clinicians' time and millions of dollars in research and development of HIF-PHI compounds for use and treatment of anemia and other conditions. This work included designing, synthesizing, and screening numerous compounds to identify novel chemical candidates for the treatment of anemia and ultimately proceeding to clinical trials with one such compound for the treatment of anemia in patients with various illnesses and conditions, including chronic kidney disease (CKD), cancer,

3

and myelodysplastic syndromes (MDS). As a result, FibroGen has assembled a library containing thousands of HIF-PH inhibitors and other compounds with untapped potential for the development of novel treatments.

6.      Defendants Liu and Dong worked at FibroGen for years and saw the promise of FibroGen's proprietary HIF-PHI compounds for use in treating anemia. But instead of carrying out their ethical and contractual responsibilities as FibroGen employees, they stole the work of FibroGen's scientists for their own profit and gain.

7.      In 2013, while still employed by FibroGen, Liu founded Kind and named himself Chief Executive Officer of the company.  Liu left FibroGen in 2015 to focus on Kind, a biopharmaceutical company that develops small molecule therapeutics, including HIF-PHIs to treat, *inter alia*, anemia.  Kind is a direct competitor to FibroGen.

8.      Following Liu's establishment of Kind, Deng remained employed at FibroGen. This enabled him to provide assistance to Liu and Kind by working to enhance Kind's investigational and clinical program with confidential information related to FibroGen's proprietary HIF-PHI compounds. Deng ultimately resigned from FibroGen in 2019 and subsequently became the Chief Scientific Officer at Kind.

9.      The FibroGen confidential information that Liu and Deng stole provided the Defendants with critical science and data related to FibroGen's proprietary HIF-PHI compounds, their mechanisms of action, and clinical efficacy for use in the treatment of anemia.  This resulted in an unlawful head start for Kind, saving significant time and money.

10.      This unlawful head start was part of an intentional scheme for Defendants to secure financing and avoid years of research developing and identifying HIF-PHI compounds with clinical efficacy.  Indeed, Kind was able to proceed with a clinical trial for AND017, a HIF-PHI compound for the treatment of anemia related to chronic kidney disease, in February 2019, shortly before Deng joined the organization and only 6 years after it was founded.

4

11.     Moreover, Liu filed at least two patent applications claiming the fruits of FibroGen's work: proprietary HIF-PHI compounds and their applications in the treatment of anemia.  Liu's patent applications use the proprietary FibroGen HIF-PHI compounds as examples in their specifications yet do not name the individuals at FibroGen who developed and synthesized the compounds.  Instead, the Kind applications name, among other inventors, Liu, and are assigned to Hangzhou Kind.  This is so despite the fact that FibroGen invented these compounds at least as early as ███.

12.     Without the critical head start Liu and Deng's theft provided, Kind could not have "developed" its own purported compounds and treatment in such a short period of time.

13.     FibroGen thus brings this action against one or more of the Defendants for correction of inventorship under 35 U.S.C. § 256, declaration of patent ownership, breach of contract, breach of the implied covenant of good faith and fair dealing, and inducing breach of contract.

**THE PARTIES**

14.     Plaintiff FibroGen is a Delaware corporation, with its principal place of business at 409 Illinois Street in San Francisco, California. Between 2008 and their departures, Liu and Deng worked at FibroGen's San Francisco, California facility.  Prior to 2008, Liu and Deng worked at FibroGen's South San Francisco, California facility.

15.     On information and belief, Defendant Hangzhou Andao (Kind) Pharmaceutical ("Hangzhou Kind") is incorporated in the People's Republic of China, with its principal place of business at Seventeenth Floor, Building Four, Health Valley, No. 1500 Wenyi West Road, Yuhang District, Hangzhou, Zhejiang, 311121, China. Liu founded Hangzhou Kind while still employed by FibroGen. Liu has filed at least two patent applications for pharmaceutical products relying on stolen FibroGen confidential information and assigned those to Hangzhou Kind.

WEST\300312112.13

16.     On information and belief, Defendant Kind Pharmaceutical LLC ("Kind USA") is incorporated in California, with its principal place of business at 303 Twin Dolphin Drive, Suite 600, Redwood City, California 94065. Kind USA is a biopharmaceutical company. Liu founded Kind while still employed by FibroGen. Liu has filed at least two patent applications for pharmaceutical products relying on stolen FibroGen confidential information and assigned those to Hangzhou Kind.

17.     On information and belief, Defendant Dr. Dong Liu's current citizenship is unknown.  Liu owns a home in Redwood City, CA and is also Chairman, Chief Executive Officer, and board member of Kind USA with a principal place of business in Redwood City, CA.

18.     On information and belief, Defendant Dr. Shaojiang Deng is a citizen of the People's Republic of China, who owns a home in Foster City, California.  Deng is also Chief Scientific Officer and board member of Kind USA with a principal place of business in Redwood City, CA.

## JURISDICTION AND VENUE

19.     FibroGen alleges certain claims arising under the Patent Laws of the United States, Title 35 of the United States Code, as well as under California law. This Court has original and exclusive jurisdiction over certain claims alleged herein under 28 U.S.C. §§ 1331, 1338(a) and 2201, and 35 U.S.C. § 256. This Court has supplemental jurisdiction over the remaining claims under 28 U.S.C. § 1367.

20.     Venue is proper in this District under 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to the claims herein occurred in this District.

## INTRADISTRICT ASSIGNMENT

21.     In accordance with Civil Local Rules 3-2(d) and 3-5(b), Plaintiff alleges that this action should be assigned to this Court's San Francisco Division.  Plaintiff's facility and principal place of business, where Defendants improperly obtained information related to FibroGen's

proprietary HIF-PHI compounds, is headquartered in San Francisco, California.  Further, acts related to Defendants' prosecution of and declaration of inventorship relating to U.S. Patent No. 11,021,478 occurred in the law offices of Bozicevic, Field, & Francis LLP in Redwood City, San Mateo County, California.  The events giving rise to Plaintiffs' claims therefore all arose in San Francisco or San Mateo County.

## FACTUAL BACKGROUND

### FibroGen's Pioneering Work With HIF-PH Inhibitors

22.     FibroGen was founded in 1993, and since that time it has been committed to discovering and developing a pipeline of first-in-class therapeutics for the treatment of chronic and life-threatening or debilitating conditions, including anemia, fibrotic disease, and cancer. With over 575 employees worldwide, FibroGen is dedicated to researching, developing and bringing new therapeutics to market.  FibroGen's mission and successes in bringing HIF-PH inhibitors like roxadustat to market are the result of decades of research and millions of dollars.

23.     Anemia is a serious medical condition characterized by the reduced capacity of the blood to carry oxygen. Patients suffering from anemia may have insufficient levels of or impaired red blood cells and low levels of hemoglobin ("Hb"), an essential protein in red blood cells responsible for transporting oxygen to cells throughout the body. Anemia is common in patients with CKD, cancer, MDS, inflammation, and other chronic illnesses and conditions. In particular, patients with CKD often develop anemia because of reduced levels of a hormone called erythropoietin, which stimulates red blood cell production.

24.     Anemia is associated with increased risks of hospitalization, cardiovascular complications, the need for blood transfusion, exacerbation of other serious medical conditions, and death.  Even in milder forms, anemia can lead to significant fatigue, cognitive dysfunction, and decreased quality of life. The more severe the anemia, as is common in CKD patients, the greater the health impact on patients. Despite its prevalence, when anemia develops in association

7

1   with a disease for which a patient receives separate treatment, the associated anemia is often left

2   untreated.

3       25.     FibroGen's proprietary programs and development of innovative medicines for the

4   treatment of anemia directly result from its investment into scientific exploration of the critical

5   targets and pathways that mediate the disease.  For example, FibroGen is a pioneer in hypoxia-

6   inducible factor ("HIF") biology.  Its hypoxia-inducible factor prolyl hydroxylase ("HIF-PH")

7   inhibitor platform builds off the discovery that a family of prolyl hydroxylase enzymes is

8   involved in regulation of HIF and HIF-mediated pathways. HIF-PH inhibitors induce the body's

9   natural coordinated process of producing red blood cells, increasing iron absorption, mobilization,

10   and transport.

11       26.     FibroGen developed its ground-breaking HIF-PHI technology through a long-

12   standing research collaboration with Dr. William Kaelin, Jr., a physician-researcher at Dana

13   Farber Cancer Institute, a leading cancer treatment and research institution and the principal

14   teaching affiliate of Harvard Medical School.  The discovery of the mechanism by which cells

15   sense and adapt to oxygen levels, including the role of erythropoietin, led to the award of the 2019

16   Nobel Prize in Physiology or Medicine to three scientists, including Dr. Kaelin.  Soon after

17   conducting the research that formed the basis for his Nobel Prize, Dr. Kaelin contacted FibroGen,

18   known to be active in the hydroxylase enzyme space.  This work led to FibroGen's invention of

19   roxadustat and other proprietary compounds that therapeutically harness the body's own natural

20   responses via the HIF pathway.

21       27.     As early as 2007, FibroGen scientists identified several potential HIF-PHI

22   compounds for further research, including roxadustat. Additional confidential and proprietary

23   HIF-PHI compounds discovered at FibroGen include ███████████████████████████████

24   These compounds were designed and synthesized at least as early as ██████████. FibroGen

25   maintains its proprietary HIF-PHI compounds in a confidential library that contains highly

8

sensitive information concerning each compound including its structure and characteristics such as $IC_{50}$ values, a measure of potency.  As a result of FibroGen's robust research program, its compound library encompasses thousands of proprietary compounds with the potential to be developed into novel treatments for anemia, MDS, cancer, and many other conditions

28.     FibroGen's diligent efforts led to the development and commercialization of roxadustat, a first-in-class medicine approved in Europe, China, Japan, Chile, and South Korea for the treatment of anemia of CKD in adult patients.  Roxadustat is also in clinical development for additional indications, including anemia associated with MDS and chemotherapy-induced anemia (CIA).

**Dr. Dong Liu's Employment and Obligations To FibroGen**

29.     Liu began his employment at FibroGen in September 2006 at its South San Francisco, California facility.  In 2008, Liu began working at FibroGen's San Francisco, California facility.

30.     More specifically, Liu worked as a Senior Scientist and then a Senior Research Scientist in the pharmacology group at FibroGen from 2006 to 2015. While at FibroGen, Liu had access to sensitive FibroGen confidential information, including its laboratories, scientific data, and technical reports.

31.     Upon information and belief, Liu was aware of FibroGen's work with HIF-PHI compounds, their mechanism of action, and use for treatment of anemia.

32.     Upon information and belief, Liu had access to FibroGen's compound library and attended project meetings where medicinal chemists presented their work related to synthesizing compounds, including FibroGen's proprietary HIF-PHI compounds.

33.     Upon information and belief, Liu did not independently or jointly conceive of any of FibroGen's proprietary HIF-PHI compounds, including roxadustat.

*FibroGen, Inc. v. Hangzhou Andao Pharmaceutical LTD., et al.*                                        COMPLAINT

WEST\300312112.13

34.     At all times during his employment with FibroGen, Liu was obligated to keep in confidence and trust all FibroGen confidential information and trade secrets.

35.     Prior to commencing employment at FibroGen, on September 14, 2006, Liu signed a Confidential Information, Secrecy and Invention Agreement ("Liu Confidentiality Agreement," attached hereto as **Exhibit A**) with FibroGen.

36.     The Liu Confidentiality Agreement defines ███████████████████████████
████████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
██████████████████████████████

37.     The Liu Confidentiality Agreement requires Liu to keep confidential information secret and use it only as authorized in the agreement; return all materials made by Liu or that came into his possession in the course of his employment with FibroGen upon the termination of this employment; disclose to FibroGen all information with respect to "INVENTIONS"; and whenever requested by FibroGen, both during and after employment, assign and convey to FibroGen or FibroGen's nominee, the sole and exclusive right, title, and interest in and to "INVENTIONS", as defined by the Confidentiality Agreement, or any applications or patents thereon.

10

38.     Liu agreed to, during the term of his employment with FibroGen, refrain from knowingly performing any act which may confer any competitive benefit or advantage upon any enterprise competing with FibroGen, its subsidiaries, affiliates, or any successor.  Further, during the term of his employment with FibroGen, Liu was required to devote full time to the business of FibroGen and not engage, individually or as an officer, director, employee, consultant, advisor, partner or co-venturer, or as a stockholder or other proprietor with a significant interest in any firm, corporation, partnership or other organization, in the business of manufacturing, selling, or distributing products in competition with the products and/or services of FibroGen or its subsidiaries or affiliates.  Liu was also required to furnish to FibroGen's Board of Directors a detailed statement of any outside employment or consulting services in which he sought to engage but was prohibited from doing so under his agreement with FibroGen.

39.     On May 26, 2015, Liu resigned from his position at FibroGen.

40.     Liu's rights and obligations under the Liu Confidentiality Agreement survived the 2015 termination of his employment with FibroGen.

41.     Further, upon his termination from FibroGen, Liu certified that he complied with all terms of the Liu Confidentiality Agreement and further certified that he did not have any of FibroGen's confidential information in his possession. Liu's Termination Certification is attached hereto as **Exhibit B**.

42.     Liu also agreed to ████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████████
███████████

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Dr. Shaojiang Deng's Employment and Obligations To FibroGen**

43.     Deng began his employment at FibroGen in November 2004 at its South San Francisco, California facility. In 2008, Deng began working at FibroGen's San Francisco, California facility.

44.     More specifically, Deng worked first as a Scientist and later as Senior Scientist and Principal Scientist in the medicinal chemistry group at FibroGen from 2004 to 2019.  While at FibroGen, Deng had access to sensitive FibroGen confidential information, including its laboratories, scientific data, and technical reports.

45.     Deng was aware of FibroGen's work with HIF-PHI compounds, their mechanism of action, and use for treatment of anemia.

46.     Upon information and belief, Deng's work at FibroGen included the design and synthesis of novel compounds such as HIF-PH inhibitors, compound re-synthesis and scaleup, and technical support for the Chemical Development group.

47.     In 2014, Deng was responsible for translating a section of a Chinese clinical trial application for roxadustat.  This section of the roxadustat clinical trial application contained detailed technical and confidential information related to the chemistry, manufacture, and controls of roxadustat as well as its mechanism of action.

48.     At all times during his employment with FibroGen, Deng was obligated to keep in confidence and trust all FibroGen confidential information and trade secrets.

49.     On November 15, 2004, prior to commencing employment at FibroGen, Deng signed a Confidential Information, Secrecy and Invention Agreement ("Deng Confidentiality Agreement", attached hereto as **Exhibit C**) with FibroGen.

50.     The Deng Confidentiality Agreement defines ███████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████

12

i ████████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████████

█████████████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████

51.     The Deng Confidentiality Agreement requires Deng to keep confidential information secret and use it only as authorized in the agreement; return all materials made by Deng or that came into his possession in the course of his employment with FibroGen upon the termination of this employment; disclose to FibroGen all information with respect to "INVENTIONS"; and whenever requested by FibroGen, both during and after employment, assign and convey to FibroGen or FibroGen's nominee, the sole and exclusive right, title, and interest in and to "INVENTIONS", as defined by the Confidentiality Agreement, or any applications or patents thereon.

52.     On April 22, 2019, Deng resigned from his position at FibroGen.

53.     Deng's rights and obligations under the Deng Confidentiality Agreement survived the 2019 termination of his employment with FibroGen.

54.     Further, upon his termination from FibroGen, Deng certified that he complied with all terms of the Confidentiality Agreement and further certified that he did not have any of FibroGen's confidential information in his possession.  Deng's Termination Certification is attached hereto as **Exhibit D**.

55.      Deng also agreed to "█████████████████████████
██████████████████████████████████████████████████████
██████████████████████████████████████████████████████
██████████████████████████████████████████████████████
██████████████████████████████████████████████████████
███████████

**Defendant Liu Founds Kind to Exploit FibroGen's Confidential Information**

56.      Upon information and belief, Kind USA was incorporated in Delaware in 2013. Liu is identified as Kind USA's founder and is listed as Kind USA's agent on its articles of incorporation.  Liu did not disclose his activities related to Kind USA to FibroGen's Board of Directors.

57.      Upon information and belief, Hangzhou Andao Pharmaceutical Co., Inc. was then founded in 2014. Upon information and belief, Liu became Hangzhou Kind's Chairman, Chief Executive Officer, and General Manager no later than July 15, 2014.  Liu did not disclose his activities related to Hangzhou Kind to FibroGen's Board of Directors.

58.      On its website, Kind describes itself as "striv[ing] to form a . . . drug development platform focusing on small molecule targeted drugs and biomacromolecules to treat anemia, cancers, and hard-to-treat diseases." (www.kindpharmaceuticals.com/index.php/about.html, last accessed Nov. 10, 2022).  Kind purports to focus on developing small molecule HIF-PHI inhibitors, HIF-2α inhibitors, and selective estrogen receptors.

59.      Upon information and belief, Kind's leading drug candidate is purported to be the oral, small molecule HIF-PHI compound AND017.

60.      Upon information and belief Kind used FibroGen's confidential information to develop AND017.

61.     Kind describes AND017 as "a small molecular inhibitor of propyl hydroxylase (PHI)," that "mimics the natural physiological regulation under hypoxia conditions to stabilize HIF and promote the production of red blood cells to treat anemia."

62.     Kind promotes AND017 as having "the best in class potential among the existing PHIs in treating CKD induced anemia."

63.     Upon information and belief, Kind intends for its AND017 compound to compete with FibroGen's roxadustat product once commercially available.

**Defendants Liu and Kind File Patent Applications on FibroGen's Proprietary Compounds**

64.     On May 8, 2018, by and through its attorneys, Kind filed PCT Application No. WO2018/205928 ("WO'928"). WO'928 names Liu as an inventor and covers indolizine derivatives and applications thereof in the treatment of anemia.  WO'928 does not name Deng as an inventor.  Upon information and belief, WO'928 does not name any other FibroGen employee as an inventor.

65.     WO'928 discloses the following FibroGen proprietary HIF-PHI compounds: ████

████████████████████████████████████████████████████████████

66.     On November 7, 2019, by and through its attorneys, Kind filed a United States Patent National Phase Application, No. 16/611,838 ("'838 application").

67.     On June 1, 2021, United States Patent No. 11,021,478 (the "'478 patent") issued from the '838 application.  The '478 patent is assigned to Hangzhou Kind and claims priority to Chinese Patent Application No. 201710322377.2 filed on May 9, 2017.  The '478 patent names Liu, but not Deng, as an inventor.  Upon information and belief, the '478 patent does not name any other FibroGen employee as an inventor.  The '478 patent is attached hereto as **Exhibit E**.

68.     The subject matter of the '838 application and the '478 patent, and the claims and inventions disclosed therein, were conceived, developed, and reduced to practice by two members

1  of FibroGen's medicinal chemistry group, Deng and Wen-Bin Ho ("Ho").  Specifically, ███████

2  ████████████████████████████████████████████████████████████████

3  ████████████████████████████████████

4          69.     Each of these compounds, which are covered by at least claim ███ was developed

5  at FibroGen in ████. More specifically, ██████████████████████████ were

6  designed by at least Deng and Ho and synthesized by at least Deng at least as early as ███████

7  ████.

8

9          70.     The '478 patent includes claims derived from the inventions of FibroGen

10 scientists, including Deng and Ho.

11         71.     On November 7, 2019, Liu, Dongdong Chen ("Chen"), Biao Deng, Xiangyun Tu

12 ("Tu"), Zinan Fang ("Fang"), Haohao Wu ("Wu"), and Danyan Gu ("Gu") submitted signed

13 declarations to the United States Patent and Trademark Office ("USPTO") asserting that each

14 individual is "an original joint inventor of a claimed invention in the ['838] application."

15         72.     On April 23, 2021, by and through its attorneys, Kind filed U.S. Patent National

16 Phase Application No. 17/239,362 ("the '362 application").  The '362 application is a

17 continuation of, and shares a specification with, the '478 patent.  The '362 application is titled

18 "Indolizine Derivatives and Their Application in Medicine" and is assigned to Hangzhou Kind.

19         73.     The subject matter of the '362 application and the claims and inventions disclosed

20 therein, were conceived and developed by at least Deng and Ho at FibroGen.  Specifically,

21 ████████████████████████████████████████████████████████████

22 ██████████████████████████████████

23

24

25         74.     Each of these compounds, which are covered by at least claims ████████, was

26 developed at FibroGen in ████. More specifically, the structures of ████████████████

27 ██████████ were designed by at least Deng and Ho and synthesized by at least Deng at least as

28 early as ██████████.

75.     The '362 application includes claims derived from the inventions of FibroGen scientists, including Deng and Ho.

76.     On April 23, 2021, Liu, Chen, Biao Deng, Tu, Fang, Wu, and Gu submitted signed declarations to the USPTO asserting that each individual is "the original inventor or an original joint inventor of a claimed invention in the ['362] application."

77.     Upon information and belief, since at least 2017, Kind has publicly stated that it holds the global patent rights to AND017. These patent rights, however, belong to FibroGen.

## COUNT I

### Correction of Inventorship Under 35 U.S.C. § 256
### (Against Kind and Liu)

78.     Plaintiff incorporates by reference the allegations of the foregoing paragraphs.

79.     Liu was not involved in conceiving, developing, and/or reducing to practice FibroGen's proprietary HIF-PHI compounds.

80.     Liu was not involved in pharmacology studies using FibroGen's proprietary HIF-PHI compounds for the treatment of anemia.

81.     The true inventors of the FibroGen's proprietary HIF-PHI compounds are at least Deng and Ho.

82.     The subject matter of the '478 patent, and the claims and the inventions disclosed therein, were developed by FibroGen scientists.

83.     While employed by FibroGen, Deng contributed to the conception, design, and synthesis of certain compounds disclosed in claim ███ of the '478 patent including at least: ███

███████████████████████████████████████████████

█████████████████████████████████████

████████████████████████████████████████

██████████████████████████

WEST\300312112.13

84.     Ho consulted with and supervised Deng on the conception and design of certain compounds disclosed in claim ■ of the '478 patent including at least: ███████████

███████████████████████████████

███████████████████████████████

███████████████████████████

█████████ Ho therefore contributed to the conception and design of these compounds.

85.     Based on the allegations above, at least Deng and Ho jointly conceived of certain compounds disclosed in claim ■ of the '478 patent including at least: ███████████

████████████████████████████████

████████████████████████████████

███████████████████████████

████████

86.     Thus, the true inventors of the '478 patent must include at least Deng and Ho.

87.     Under 28 U.S.C. § 2201 and 35 U.S.C. § 256, Plaintiff seeks the correction of inventorship of the '478 patent by removing at least Liu. [1]

88.     Under 28 U.S.C. § 2201 and 35 U.S.C. § 256, Plaintiff seeks the correction of inventorship of the '478 patent by adding at least Deng and Ho.

## COUNT II

### Declaration of Patent Ownership
### (Against Kind and Liu)

89.     Plaintiff incorporates by reference the allegations of the foregoing paragraphs.

90.     Upon leaving FibroGen and joining Kind, Liu filed at least two United States patent applications relating to work allegedly done at Kind.  More specifically, he filed at least

---

[1] Based on its currently-asserted inventorship, FibroGen reserves the right to amend its complaint to state a claim for correction of inventorship of any patent issuing from the Kind '362 application upon issuance.

18

two patent applications which incorporated inventions that others at FibroGen, including Deng and Ho, conceived, developed, and reduced to practice while employed by FibroGen.  These inventions include HIF-PH inhibitors for the treatment of anemia such as ████████████████████████
████████████████.  One of these patent applications containing FibroGen's inventions issued as the '478 patent.  Liu assigned the patent and applications containing FibroGen's inventions to Hangzhou Kind.  The patent and applications are referred to generally as the Kind Patents.

91.     The Kind Patents include, but are not limited to:

(a)     U.S. Serial No. 16/611,838, filed November 7, 2019 (now U.S. Patent No. 11,021,478); and

(b)     U.S. Serial No. 17/239,362, filed April 23, 2021.

92.     Liu failed to disclose to FibroGen that he assigned FibroGen's inventions to Hangzhou Kind. Kind improperly claims to be the true owner of FibroGen's inventions, and the Kind Patents constitute an improper and unauthorized assignment of FibroGen's interest in and ownership of FibroGen's inventions to Kind.

93.     A controversy presently exists between FibroGen and Kind as to who is the proper owner of the Kind Patents.

94.     Under the terms of the Liu Confidentiality Agreement, FibroGen is entitled to a declaration that FibroGen is the true and lawful owner of the entire right, title, and interest in and to the Kind Patents, or in the alternative, to an order reassigning all rights in the Kind Patents to FibroGen.  Furthermore, FibroGen is entitled to a declaration that all rights in the Kind Patents granted to parties other than FibroGen are null and void.

## COUNT III

### Breach of Contract
### (Against Liu)

95.     Plaintiff incorporates by reference the allegations of the foregoing paragraphs.

96.     On September 14, 2006, Liu entered into the Liu Confidentiality Agreement--a valid, binding, and enforceable written agreement--with FibroGen.

97.     The Liu Confidentiality Agreement requires Liu to keep FibroGen's confidential information secret and use it only as authorized in the agreement; return all materials made by Liu or that came into his possession in the course of his employment with FibroGen upon the termination of this employment; disclose to FibroGen all information with respect to "INVENTIONS"; and whenever requested by FibroGen, both during and after employment, assign and convey to FibroGen or FibroGen's nominee, the sole and exclusive right, title, and interest in and to "INVENTIONS", as defined by the Confidentiality Agreement, or any applications or patents thereon.  The Liu Confidentiality Agreement defines ███████

███████████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████

98.     At all times relevant herein, Liu knew of his obligation to keep FibroGen's confidential information secret and use it only as authorized in the Liu Confidentiality Agreement, to disclose to FibroGen all information with respect to "INVENTIONS," as defined in the Liu Confidentiality Agreement, and to assign and convey to FibroGen the sole and exclusive right, title, and interest in and to INVENTIONS, as defined in the Liu Confidentiality Agreement, or any applications or patents thereon.

99.     The Liu Confidentiality Agreement required Liu to, during the term of his employment with FibroGen, refrain from knowingly performing any act which may confer any

competitive benefit or advantage upon any enterprise competing with FibroGen, its subsidiaries, affiliates, or any successor.  Further, during the term of his employment with FibroGen, Liu was required by the terms of the Liu Confidentiality Agreement to devote full time to the business of FibroGen and not engage, individually or as an officer, director, employee, consultant, advisor, partner or co-venturer, or as a stockholder or other proprietor with a significant interest in any firm, corporation, partnership or other organization, in the business of manufacturing, selling, or distributing products in competition with the products and/or services of FibroGen or its subsidiaries or affiliates.  Liu was also required to furnish to FibroGen's Board of Directors a detailed statement of any outside employment or consulting services in which he sought to engage but was prohibited from doing so under the Liu Confidentiality Agreement.

100.    At all times relevant herein, Liu knew of his obligations to refrain from knowingly performing any act which may confer any competitive advantage or benefit upon any enterprise competing with FibroGen and to furnish FibroGen's Board of Directors with a detailed statement of any outside employment or consulting services in which he sought to engage.

101.    At all times relevant herein, FibroGen has performed all of its obligations under the Liu Confidentiality Agreement.

102.    In 2013, while employed at FibroGen, Liu founded Kind USA.  Liu did not disclose his activities related to Kind USA to FibroGen's Board of Directors.

103.    In 2014, while employed at FibroGen, Liu founded Hangzhou Kind and became its Chairman, Chief Executive Officer, and General Manager.  Liu did not disclose his activities related to Hangzhou Kind to FibroGen's Board of Directors.

104.    On May 26, 2015, Liu resigned from his position at FibroGen.

105.    On information and belief, on November 7, 2019, Liu directed Kind to file the '838 application, which claims and discloses FibroGen's "INVENTIONS," as defined under the Liu Confidentiality Agreement.  Specifically, the subject matter of the '838 application and the

21

'478 patent, and the claims and inventions disclosed therein, were conceived, developed, and reduced to practice by at least Deng and Ho at FibroGen. ████████████████████████ ███████████████████████████████████████████████████████████████████████████████████ ███████████████████████

106.    On November 8, 2019, Liu assigned his interest in the '838 application to Hangzhou Kind.

107.    On information and belief, on August 23, 2021, Liu directed Kind to file the '362 application, which claims and discloses FibroGen's "INVENTIONS," as defined under the Liu Confidentiality Agreement.  Specifically, the subject matter of the '362 application, and the claims and inventions disclosed therein, were conceived, developed, and reduced to practice by at least Deng and Ho at FibroGen. ██████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████████████ █████████

108.    On August 26, 2021, Liu assigned his rights, title, and interest in the '632 application to Hangzhou Kind.

109.    Liu has materially breached the Liu Confidentiality Agreement by, among other wrongful actions:

(a)      Failing to keep FibroGen's confidential information, specifically FibroGen's proprietary compounds ████████████████████████, secret and to use this information only as authorized in the Liu Confidentiality Agreement;

(b)      Failing to return all materials that came into his possession in the course of his employment with FibroGen, specifically information concerning FibroGen's proprietary compounds ██████████████████████ upon the termination of his employment with FibroGen;

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

(c)     Failing to disclose to FibroGen all information with respect to the Kind Patents, including that he assigned FibroGen's inventions to Hangzhou Kind;

(d)     Failing to assign his rights, titles, and interests in and to the Kind Patents to FibroGen;

(e)     Failing to refrain from knowingly performing any act which may confer any competitive advantage or benefit upon any enterprise competing with FibroGen, including Kind USA and Hangzhou Kind; and

(f)     Failing to furnish FibroGen's Board of Directors with a detailed statement of any outside employment or consulting services in which he sought to engage, including his actions related to Kind USA and Hangzhou Kind.

110.    Liu's failure to perform his duties and obligations under the Liu Confidentiality Agreement constitutes a material breach thereof.

111.    By his wrongful action of assigning his rights in FibroGen's inventions to Hangzhou Kind, both Kind and Liu have profited from and been unjustly enriched by FibroGen's inventions, which rightfully belong to FibroGen.  Any compensation received by Liu from Kind relating to FibroGen's inventions, including FibroGen's proprietary compounds ███████ ████████████████████ and the Kind Patents should be disgorged and returned to FibroGen.

112.    As a result of Liu's breaches of the Liu Confidentiality Agreement, FibroGen is entitled to all necessary relief to establish that FibroGen is the true and lawful owner of the entire right, title, and interest in and to the Kind Patents including a declaration of rights, a further declaration that Liu has waived any rights that he has as an inventor of the Kind Patents, and specific performance of any of Liu's obligations under the Liu Confidentiality Agreement necessary to effectuate FibroGen's ownership of FibroGen's inventions. With respect to the

request for specific performance of Liu's obligations under the Liu Confidentiality Agreement, FibroGen lacks an adequate remedy at law.

113.    By reason of Liu's breaches of the Liu Confidentiality Agreement, FibroGen suffered damages in an amount to be proven at trial.

## COUNT IV

### Breach of the Implied Covenant of Good Faith and Fair Dealing
### (Against Liu)

114.    Plaintiff incorporates by reference the allegations of the foregoing paragraphs.

115.    Every contract entered into in the State of California contains an implied covenant of good faith and fair dealing, whereby the parties to the contract agree not to do anything that will deprive the other party of the benefit of that agreement.

116.    The Liu Confidentiality Agreement, like all contracts, contained an implied promise of good faith and fair dealing.

117.    Liu breached the implied covenant and deprived FibroGen of the benefits of the Liu Confidentiality Agreement by, among other wrongful actions:

(a)     Failing to keep FibroGen's confidential information, specifically FibroGen's proprietary compounds ████████████████████████, secret and to use this information only as authorized in the Liu Confidentiality Agreement;

(b)     Failing to return all materials that came into his possession in the course of his employment with FibroGen, specifically information concerning FibroGen's proprietary compounds ██████████████████████ upon the termination of his employment with FibroGen;

(c)     Failing to disclose to FibroGen all information with respect to the Kind Patents, including that he assigned FibroGen's inventions to Hangzhou Kind;

(d)     Failing to assign his rights, titles, and interests in and to the Kind Patents to FibroGen;

(e)     Failing to refrain from knowingly performing any act which may confer any competitive advantage or benefit upon any enterprise competing with FibroGen, including Kind USA and Hangzhou Kind; and

(f)     Failing to furnish FibroGen's Board of Directors with a detailed statement of any outside employment or consulting services in which he sought to engage, including his actions related to Kind USA and Hangzhou Kind.

118.    By reason of Liu's breaches of the implied covenant of good faith and fair dealing, FibroGen has suffered damages in an amount to be proven at trial.

## COUNT V

### Breach of Contract
### (Against Deng)

119.    Plaintiff incorporates by reference the allegations of the foregoing paragraphs.

120.    On November 15, 2004, Deng entered into the Deng Confidentiality Agreement--a valid, binding, and enforceable written agreement--with FibroGen.

121.    The Deng Confidentiality Agreement requires Deng to keep FibroGen's confidential information secret and use it only as authorized in the agreement; return all materials made by Deng or that came into his possession in the course of his employment with FibroGen upon the termination of this employment; disclose to FibroGen all information with respect to "INVENTIONS"; and whenever requested by FibroGen, both during and after employment, assign and convey to FibroGen or FibroGen's nominee, the sole and exclusive right, title, and interest in and to "INVENTIONS", as defined by the Confidentiality Agreement, or any applications or patents thereon.  The Deng Confidentiality Agreement defines ████████████

████████████████████████████████████

1

2

3

4

5

6

7 ▮▮▮▮▮▮

8   122.   At all times relevant herein, Deng knew of his obligation to keep FibroGen's

9 confidential information secret and use it only as authorized in the Deng Confidentiality

10 Agreement, to disclose to FibroGen all information with respect to "INVENTIONS," as defined

11 in the Deng Confidentiality Agreement, and to assign and convey to FibroGen the sole and

12 exclusive right, title, and interest in and to INVENTIONS, as defined in the Deng Confidentiality

13 Agreement, or any applications or patents thereon.

14   123.   At all times relevant herein, FibroGen has performed all of its obligations under

15

16 the Deng Confidentiality Agreement.

17   124.   Deng was aware of FibroGen's work with HIF-PHI compounds, their mechanism

18 of action, and use for treatment of anemia.

19   125.   At least as early as ▮▮▮▮▮▮, Deng contributed to the development of

20 FibroGen's proprietary HIF-PHI compounds ▮▮▮▮▮▮▮▮▮▮▮▮

21

22   126.   On information and belief, Deng conveyed information concerning FibroGen's

23 proprietary HIF-PHI compounds ▮▮▮▮▮▮▮▮▮▮ to Kind and Liu.

24   127.   On November 7, 2019, Kind filed the '838 application, which claims and discloses

25 FibroGen's "INVENTIONS," as defined under the Deng Confidentiality Agreement.

26 Specifically, the subject matter of the '838 application and the '478 patent, and the claims and

27 inventions disclosed therein, were conceived and developed by at least Deng and Ho at FibroGen.

28

1   ████████████████████████████████████████████████

2   ██████████████████████████████████████

3   128.   The '478 patent is assigned to Hangzhou Kind.

4   129.   On August 23, 2021, Kind filed the '362 application, which claims and discloses

FibroGen's "INVENTIONS," as defined under the Deng Confidentiality Agreement.

Specifically, the subject matter of the '362 application, and the claims and inventions disclosed

therein, were conceived and developed by at least Deng and Ho at FibroGen. ██████████

█████████████████████████████████████████████████

█████████████████████████████████

130.   The '632 application is assigned to Hangzhou Kind.

131.   Deng has materially breached the Deng Confidentiality Agreement by, among

other wrongful actions:

(a)   Failing to keep FibroGen's confidential information, specifically

FibroGen's proprietary compounds ████████████████████████████ secret and to use

this information only as authorized in the Deng Confidentiality Agreement and instead conveying

confidential information concerning FibroGen's proprietary HIF-PHI compounds ████████████

███████████████████ to Kind and Liu;

(b)   Failing to return all materials that came into his possession in the course of

his employment with FibroGen, specifically information concerning FibroGen's proprietary

compounds ██████████████████████████, upon the termination of his employment

with FibroGen; and

(c)   Failing to disclose to FibroGen all information with respect to the Kind

Patents.

132.   Deng's failure to perform his duties and obligations under the Deng

Confidentiality Agreement constitutes a material breach thereof.

27

133.   By his wrongful action of conveying information concerning FibroGen's proprietary HIF-PHI compounds ███████████████████████ to Kind and Liu, at least Kind and Liu have profited from and been unjustly enriched by FibroGen's inventions, which rightfully belong to FibroGen. Any compensation received by Deng from Kind and Liu relating to FibroGen's inventions, including FibroGen's proprietary compounds ██████████ ███████████████████, and the Kind Patents should be disgorged and returned to FibroGen.

134.   By reason of Deng's breaches of the Deng Confidentiality Agreement, FibroGen is entitled to all necessary relief to establish that FibroGen is the true and lawful owner of the entire right, title, and interest in and to the Kind Patents including a declaration of rights, a further declaration that Deng has waived any rights that he has as an inventor of the Kind Patents, and specific performance of any of Deng's obligations under the Deng Confidentiality Agreement necessary to effectuate FibroGen's ownership of FibroGen's inventions. With respect to the request for specific performance of Deng's obligations under the Deng Confidentiality Agreement, FibroGen lacks an adequate remedy at law.

135.   By reason of Deng's breaches of the Deng Confidentiality Agreement, FibroGen suffered damages in an amount to be proven at trial.

## COUNT VI

### Breach of the Implied Covenant of Good Faith and Fair Dealing
### (Against Deng)

136.   Plaintiff incorporates by reference the allegations of the foregoing paragraphs.

137.   Every contract entered into in the State of California contains an implied covenant of good faith and fair dealing, whereby the parties to the contract agree not to do anything that will deprive the other party of the benefit of that agreement.

138.    The Deng Confidentiality Agreement, like all contracts, contained an implied promise of good faith and fair dealing.

139.    Deng breached the implied covenant and deprived FibroGen of the benefits of the Deng Confidentiality Agreement by, among other wrongful actions:

(a)    Failing to keep FibroGen's confidential information, specifically FibroGen's proprietary compounds ███████████████████████ secret and to use this information only as authorized in the Deng Confidentiality Agreement and instead conveying confidential information concerning FibroGen's proprietary HIF-PHI compounds ███████████ ██████████████ to Kind and Liu;

(b)    Failing to return all materials that came into his possession in the course of his employment with FibroGen, specifically information concerning FibroGen's proprietary compounds █████████████████ upon the termination of his employment with FibroGen; and

(c)    Failing to disclose to FibroGen all information with respect to the Kind Patents.

140.    By reason of Deng's breaches of the implied covenant of good faith and fair dealing, FibroGen has suffered damages in an amount to be proven at trial.

## COUNT VII

### Inducing Breach of the Liu Confidentiality Agreement
### (Against Kind)

141.    Plaintiff incorporates by reference the allegations of the foregoing paragraphs.

142.    On September 14, 2006, Liu entered into the Liu Confidentiality Agreement—a valid, binding, and enforceable written agreement--with FibroGen.

143.    The Liu Confidentiality Agreement requires Liu to keep FibroGen's confidential information secret and use it only as authorized in the agreement; return all materials made by Liu or that came into his possession in the course of his employment with FibroGen upon the

termination of this employment; disclose to FibroGen all information with respect to "INVENTIONS"; and whenever requested by FibroGen, both during and after employment, assign and convey to FibroGen or FibroGen's nominee, the sole and exclusive right, title, and interest in and to "INVENTIONS", as defined by the Confidentiality Agreement, or any applications or patents thereon.  The Liu Confidentiality Agreement defines ████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████

144.    At all times relevant herein, Liu knew of his obligation to keep FibroGen's confidential information secret and use it only as authorized in the Liu Confidentiality Agreement, to disclose to FibroGen all information with respect to "INVENTIONS," as defined in the Liu Confidentiality Agreement, and to assign and convey to FibroGen the sole and exclusive right, title, and interest in and to INVENTIONS, as defined in the Liu Confidentiality Agreement, or any applications or patents thereon.

145.    At all times relevant herein, Kind knew of Liu's obligations under the Liu Confidentiality agreement to keep FibroGen's confidential information secret and use it only as authorized in the Liu Confidentiality Agreement, to disclose to FibroGen all information with respect to "INVENTIONS," as defined in the Liu Confidentiality Agreement, and to assign and convey to FibroGen the sole and exclusive right, title, and interest in and to INVENTIONS, as defined in the Liu Confidentiality Agreement, or any applications or patents thereon.  Liu is a co-founder, employee, and officer of Kind.

30

146.   Liu materially breached the Liu Confidentiality Agreement by, among other wrongful actions:

(a)   Failing to keep FibroGen's confidential information, specifically FibroGen's proprietary compounds ████████████████████████, secret and to use this information only as authorized in the Liu Confidentiality Agreement;

(b)   Failing to return all materials that came into his possession in the course of his employment with FibroGen, specifically information concerning FibroGen's proprietary compounds ███████████████, upon the termination of his employment with FibroGen;

(c)   Failing to disclose to FibroGen all information with respect to the Kind Patents, including that he assigned FibroGen's inventions to Hangzhou Kind; and

(d)   Failing to assign his rights, titles, and interests in and to the Kind Patents to FibroGen.

147.   Kind intended to disrupt Liu's performance of his obligations under the Liu Confidentiality Agreement and had a profit motive for doing so.

148.   Kind did in fact disrupt Liu's performance of his obligations under the Liu Confidentiality agreement by, among other things, pursuing patent applications and accepting the assignment of patent applications and issued patents from Liu, with full knowledge that those patent applications and issued patents rightfully belong to FibroGen, not to Kind.  Upon information and belief, Kind offered to and did in fact provide Liu with an executive title and significant equity in Kind, as an incentive for Liu to breach his obligations under the Liu Confidentiality Agreement and assign those patent applications and issued patents to Kind instead of FibroGen.  Kind intentionally disrupted Liu's performance of his obligations under the Liu Confidentiality Agreement so that Kind could economically benefit by obtaining valuable patent applications and issued patents.  In the absence of Kind's wrongful conduct, which was the

moving cause of Liu's breaches of the Liu Confidentiality Agreement, Liu would have performed as required under the Liu Confidentiality Agreement.

149.    Kind's conduct was a substantial factor in causing the harm to FibroGen.  As a result of Kind's conduct described herein, FibroGen was harmed, and has suffered damages in an amount to be proven at trial.

## COUNT VIII

### Inducing Breach of the Deng Confidentiality Agreement
### (Against Kind and Liu)

150.    Plaintiff incorporates by reference the allegations of the foregoing paragraphs.

151.    On November 15, 2004, Deng entered into the Deng Confidentiality Agreement—a valid, binding, and enforceable written agreement--with FibroGen.

152.    The Deng Confidentiality Agreement requires Deng to keep FibroGen's confidential information secret and use it only as authorized in the agreement; return all materials made by Deng or that came into his possession in the course of his employment with FibroGen upon the termination of this employment; disclose to FibroGen all information with respect to "INVENTIONS"; and whenever requested by FibroGen, both during and after employment, assign and convey to FibroGen or FibroGen's nominee, the sole and exclusive right, title, and interest in and to "INVENTIONS", as defined by the Confidentiality Agreement, or any applications or patents thereon.  The Deng Confidentiality Agreement defines ████████████

*FibroGen, Inc. v. Hangzhou Andao Pharmaceutical LTD., et al.*                                    COMPLAINT

WEST\300312112.13

1

2   ███████

153.   At all times relevant herein, Deng knew of his obligation to keep FibroGen's confidential information secret and use it only as authorized in the Deng Confidentiality Agreement, to disclose to FibroGen all information with respect to "INVENTIONS," as defined in the Deng Confidentiality Agreement, and to assign and convey to FibroGen the sole and exclusive right, title, and interest in and to INVENTIONS, as defined in the Deng Confidentiality Agreement, or any applications or patents thereon.

154.   At all times relevant herein, Kind and Liu knew of Deng's obligations under the Deng Confidentiality agreement to keep FibroGen's confidential information secret and use it only as authorized in the Deng Confidentiality Agreement, to disclose to FibroGen all information with respect to "INVENTIONS," as defined in the Deng Confidentiality Agreement, and to assign and convey to FibroGen the sole and exclusive right, title, and interest in and to INVENTIONS, as defined in the Deng Confidentiality Agreement, or any applications or patents thereon.  Deng is an employee and officer of Kind.

155.   Deng has materially breached the Deng Confidentiality Agreement by, among other wrongful actions:

(a)   Failing to keep FibroGen's confidential information, specifically FibroGen's proprietary compounds ███████████████████, secret and to use this information only as authorized in the Deng Confidentiality Agreement and instead conveying confidential information concerning FibroGen's proprietary HIF-PHI compounds ███████ ███████████ to Kind and Liu;

(b)   Failing to return all materials that came into his possession in the course of his employment with FibroGen, specifically information concerning FibroGen's proprietary

33

compounds ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ upon the termination of his employment with FibroGen; and

(c)     Failing to disclose to FibroGen all information with respect to the Kind Patents.

156.    Kind and Liu intended to disrupt Deng's performance of his obligations under the Deng Confidentiality Agreement and had a profit motive for doing so.

157.    Kind and Liu did in fact disrupt Deng's performance of his obligations under the Deng Confidentiality agreement by, among other things, inducing Deng to convey confidential information concerning FibroGen's proprietary HIF-PHI compounds ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮ to Kind and Liu, with full knowledge that this information was confidential, and that Deng was subject to an obligation to keep it secret.  Upon information and belief, Kind and Liu offered to and did in fact provide Deng with an executive title and significant equity in Kind, as an incentive for Deng to breach his obligations under the Deng Confidentiality Agreement and convey confidential information concerning FibroGen's proprietary HIF-PHI compounds ▮▮▮▮▮▮▮▮▮▮▮ to Kind and Liu.  Kind and Liu intentionally disrupted Deng's performance of his obligations under the Deng Confidentiality Agreement so that they could economically benefit by receiving information used to obtain valuable patent applications and issued patents.  In the absence of Kind's and Liu's wrongful conduct, which was the moving cause of Deng's breaches of the Deng Confidentiality Agreement, Deng would have performed as required under the Deng Confidentiality Agreement.

158.    Kind's and Liu's conduct was a substantial factor in causing the harm to FibroGen. As a result of Kind's and Liu's conduct described herein, FibroGen was harmed, and has suffered damages in an amount to be proven at trial.

34

**JURY TRIAL DEMAND**

In accordance with Federal Rule of Civil Procedure 38 and Civil Local Rule 3-6(a), Plaintiff requests a jury trial of all issues properly triable by jury.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment against Defendants as follows:

1.      That the inventorship of the '478 patent be corrected to reflect the true inventors, including Deng and Ho, and that Dong Liu be removed as an inventor of the '478 patent;

2.      That FibroGen shall be declared the true and lawful owner of the entire right, title, and interest in and to the Kind Patents, including but not limited to:

(a)      U.S. Patent National Phase Application Serial No. 16/611,838, filed November 7, 2019 (now U.S. Patent No. 11,021,478); and

(b)      U.S. Patent National Phase Application Serial No. 17/239,362, filed April 23, 2021.

3.      That Defendants Liu and Kind be ordered to assign all patent rights in the Kind Patents to FibroGen;

4.      That Defendants Kind and Liu be ordered to assign any and all patent rights they may have in the '362 application relating to FibroGen's inventions to FibroGen;

5.      That Defendants Liu and Deng be ordered to return all of their materials from FibroGen to FibroGen.

6.      That Defendants be ordered to pay damages to Plaintiff according to proof at trial;

7.      That Defendant Kind be ordered to disgorge any compensation which is attributable to the Kind Patents;

8.      That Defendant Liu be ordered to disgorge any compensation which is attributable to the Kind Patents;

35

WEST\300312112.13

9.      That Defendant Deng be ordered to disgorge compensation which is attributable to the Kind Patents;

10.      That Defendant Liu be preliminarily and permanently enjoined from any further breaches of the Liu Confidentiality Agreement;

11.      That Defendant Deng be preliminarily and permanently enjoined from any further breaches of the Deng Confidentiality Agreement;

12.      That Defendant Kind be preliminarily and permanently enjoined from further actions that induce further breaches of the Liu Confidentiality Agreement by Defendant Liu and/or disrupt Defendant Liu's performance of his obligations under the Liu Confidentiality Agreement;

13.      That Defendants Kind and Liu be preliminarily and permanently enjoined from further actions that induce further breaches of the Deng Confidentiality Agreement by Defendant Deng and/or disrupt Defendant Deng's performance of his obligations under the Deng Confidentiality Agreement; and

14.      That Plaintiff may have such other and further relief as this Court may deem proper, including prejudgment interest and an award of attorneys' fees and costs.

Dated this 14th day of November, 2022

Respectfully submitted,

*/s/Susan Krumplitsch* _____

Susan Krumplitsch (SBN 241016)
**DLA PIPER LLP (US)**
2000 University Avenue
East Palo Alto, CA 94303
Telephone: (650) 833-2000
susan.krumplitsch@us.dlapiper.com

Ellen Scordino (*pro hac vice* forthcoming)
**DLA PIPER LLP (US)**
33 Arch Street, 26th Floor
Boston, MA 02110

36

Telephone: (617) 406-6000
ellen.scordino@us.dlapiper.com

Stephanie Piper (*pro hac vice* forthcoming)
**DLA PIPER LLP (US)**
1251 Avenue of the Americas
New York, NY 10020
Telephone: (212) 335-4500
stephanie.piper@us.dlapiper.com

Nancy J. Gettel (SBN 277332) (admission forthcoming)
**FibroGen, Inc.**
409 Illinois St.
San Francisco, CA 94158
Telephone: (415) 978-1200
ngettel@fibrogen.com

*Counsel for Plaintiff*
*FibroGen Inc.*