United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FIBROGEN, INC., | Case No. 22-cv-07148-AMO |
| Plaintiff, | |
| v. | **ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS** |
| HANGZHOU ANDAO PHARMACEUTICAL LTD., et al., | Re: Dkt. Nos. 31, 78, 105 |
| Defendants. | |

This case is about former employees' use of an employer's intellectual property. Defendants Hangzhou Andao Pharmaceutical Ltd., Kind Pharmaceuticals LLC, Dr. Dong Liu, and Dr. Shaojiang Deng's motion to dismiss was heard before this Court on August 17, 2023. Also pending before the Court is Defendants' motion for sanctions. Having read the papers filed by the parties and carefully considered their arguments therein and those made at the hearing, as well as the relevant legal authority, the Court hereby **GRANTS IN PART AND DENIES IN PART** the motion to dismiss and **TERMINATES** the motion for sanctions, subject to resubmission, for the following reasons.

**I.     Background**[1]

Plaintiff FibroGen, Inc. ("FibroGen") is a biopharmaceutical company that develops and commercializes therapeutics. Compl. (ECF 1, 101) ¶ 2. Defendants Dr. Dong Liu and Dr. Shaojiang Deng ("Individual Defendants") are former FibroGen employees. Compl. ¶¶ 6-8. Liu worked for FibroGen from 2006 to 2015 as a scientist in the Pharmacology Group. Compl. ¶ 30.

---

[1] The Court accepts Plaintiffs' allegations in the complaint as true and construes the pleadings in the light most favorable to the Plaintiffs. *See Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008) (citation omitted).

United States District Court
Northern District of California

1    Deng worked for FibroGen from 2004 to 2019 as a scientist in the Medicinal Chemistry Group.

2    Compl. ¶ 44.  In 2013, while employed at FibroGen, Liu founded Kind Pharmaceuticals LLC

3    ("Kind"), a biopharmaceutical company that develops small molecule therapeutics, and named

4    himself CEO.  Compl. ¶ 7.  Liu left FibroGen in 2015 to focus on Kind.  Compl. ¶ 7.  Deng

5    remained employed at FibroGen until 2019 (when he joined Kind) and supplied Liu with

6    confidential information about FibroGen's HIF-PHI compounds that Kind used in its patents.

7    Compl. ¶¶ 8-11.

8         Kind filed a patent and patent applications which contain FibroGen's proprietary HIF-PHI

9    compounds: PCT Application No. WO2018/205928 (WO'928), filed on May 8, 2018; U.S. Patent

10   No. 11,021,478 (the '478 patent), filed November 7, 2019, and issued on June 1, 2021; and U.S.

11   Patent National Phase Application No. 17/239,362 (the '362 application) (a continuation of the

12   '478 patent), filed April 23, 2021.  Compl. ¶¶ 11, 64-67, 72.  WO'928, the '478 patent, and the

13   '362 application describe four compounds which overlap with compounds FibroGen conceived

14   and developed, but did not patent, in 2008.  Compl. ¶¶ 11, 65-77.  Deng developed the four HIF-

15   PHI compounds in 2008 along with Wen-Bin Ho, another scientist at FibroGen.  Compl. ¶¶ 68,

16   74-77.  Liu and Deng were aware of FibroGen's work with these compounds, Compl. ¶¶ 31, 45,

17   and Liu had access to the compound library, Compl. ¶ 32.  The '478 patent contains fifteen claims;

18   one claim – claim 14 – contains 64 compounds, four of which FibroGen conceived of in 2008.

19   Compl. ¶ 69; ECF 1-5 at 128:35-135:25.

20        Liu and Deng signed a Confidentiality Agreement ("Agreement") with FibroGen when

21   they began employment.  Compl. ¶¶ 35-37, 48-51.  Upon resigning from FibroGen, they certified

22   that they complied with the terms of the Agreement and that they did not have any of FibroGen's

23   confidential information in their possession.  Compl. ¶¶ 41-42, 54-55.  The Agreement, governed

24   by California law, states that employees to assign all "Inventions" to FibroGen, which are defined

25   as:

26        [A]ny and all inventions, discoveries, concepts and ideas, whether patentable or not
27        . . . resulting from work performed by Employee for the Company, performed during
          Employee's regular working hours, utilizing equipment, supplies, facilities or
28        CONFIDENTIAL INFORMATION of the Company, which

2

<table>
<tr><td>1</td><td>(i) relate to the actual or demonstrably anticipated research or development of the company, or</td></tr>
</table>

1

2

                (i) relate to the actual or demonstrably anticipated research or development of the company, or

3

4

                (ii) are made or conceived or reduced to practice by Employee individually or in conjunction with others during either Employee's employment at the Company; or

5

6

                (iii) based on or related to CONFIDENTIAL INFORMATION, within one (1) year after termination of employment.

7 ECF 101-1 (Agreement) §§ 1(b), 5, 11(e).  The Agreement also prohibits employees from

8 disclosing confidential information (i.e., inventions, patent applications, trade secrets, and "any

9 other information of value relating to the business and/or field of interest of the Company").

10 *Id.* §§ 1(a), 3.

11         FibroGen brought this lawsuit against Defendants Hangzhou Andao Pharmaceutical Ltd.

12 and Kind Pharmaceuticals LLC (collectively, "Kind"), and Dr. Dong Liu and Dr. Shaojiang Deng

13 ("Individual Defendants") (all collectively, "Defendants") alleging eight causes of action based on

14 Defendants' use of FibroGen's four HIF-PHI compounds: correction of inventorship; declaration

15 of patent ownership; breach of contract and breach of implied covenant of good faith and fair

16 dealing; and inducing breach of Liu's and Deng's confidentiality agreements.  Compl. ¶¶ 78-158.

17 Defendants filed a motion to dismiss on February 7, 2023, seeking to dismiss the complaint in its

18 entirety.  Motion (ECF 31, 98).

19 **II.    LEGAL STANDARD**

20         Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain

21 statement of the claim showing that the pleader is entitled to relief."  A defendant may move to

22 dismiss a complaint for failing to state a claim upon which relief can be granted under Federal

23 Rule of Civil Procedure 12(b)(6).  "Dismissal under Rule 12(b)(6) is appropriate only where the

24 complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory."

25 *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).  To survive a Rule

26 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on

27 its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible

28 when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that

United States District Court
Northern District of California

1    the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

2    Courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of

3    fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir.

4    2008) (citation omitted).

5    **III.    DISCUSSION**

6            Defendants seek to dismiss each of the eight counts in FibroGen's complaint:

7    (1) Correction of Inventorship; (2) Declaration of Patent Ownership; (3) Breach of Contract and

8    (4) Breach of the Implied Covenant of Good Faith and Fair Dealing (against Liu); (5) Breach of

9    Contract and (6) Breach of the Implied Covenant of Good Faith and Fair Dealing (against Deng);

10   (7) Inducing Breach of the Liu Confidentiality Agreement; and (8) Inducing Breach of the Deng

11   Confidentiality Agreement.  The Court considers each argument in turn.

12           **A.  Improper Inventorship - Correction of Patent Ownership (Count I)**

13           As a general matter, patents must list all the true inventors.  *Trovan, Ltd. v. Sokymat SA,*

14   *Irori*, 299 F.3d 1292, 1301 (Fed. Cir. 2002).  Under 35 U.S.C. § 256, when a person is erroneously

15   named or not named in an issued patent, a court may order correction of the patent on notice and

16   hearing of all parties concerned.  Section 256 "provides a cause of action to interested parties to

17   have the inventorship of a patent changed to reflect the true inventors of the subject matter claimed

18   in the patent."  *CODA Dev. S.R.O. v. Goodyear Tire & Rubber Co.*, 916 F.3d 1350, 1358 (Fed.

19   Cir. 2019) (citing *Fina Oil & Chem. Co. v. Ewen*, 123 F.3d 1466, 1471 (Fed. Cir. 1997)).

20   "Section 256 addresses two types of inventorship errors – misjoinder and nonjoinder."  *CODA,*

21   916 F.3d at 1358.  "Misjoinder is the error of naming a person as an inventor who is not an

22   inventor; nonjoinder is the error of omitting an inventor."  *Id.*  Section 256 allows "complete

23   substitution of inventors" through claims of nonjoinder and misjoinder together.  *Id.* (citation

24   omitted).

25           "The inventors named in an issued patent are presumed correct."  *Univ. of Pittsburgh of*

26   *Commonwealth Sys. of Higher Educ. v. Hedrick*, 573 F.3d 1290, 1297 (Fed. Cir. 2009)

27   ("*Hedrick*").  To overcome that presumption, a party must allege that "the persons to be removed

28   did not contribute to the invention of any of the allowed claims."  *Id.*  To state a claim for

United States District Court
Northern District of California

1    complete substitution of inventors under Section 256, a plaintiff must plausibly allege facts

2    demonstrating that (1) the erroneously omitted inventor conceived the invention claimed in the

3    patent and (2) the named inventor(s) on the patent did not conceive the invention.  *See CODA*, 916

4    F.3d at 1358-59.  FibroGen brings both claims of misjoinder and nonjoinder to remove Liu and

5    add Deng and Ho to the '478 patent.  The Court addresses each claim in turn.

6          **1.  Misjoinder**

7          FibroGen brings a claim of misjoinder against Liu, alleging that he was not involved in

8    conceiving or developing FibroGen's HIF-PHI compounds.  Compl. ¶¶ 79, 86.  Defendants argue

9    that the misjoinder claim as to Liu fails because 1) FibroGen has failed to allege that Liu did not

10   conceive of any of the various inventions claimed in the '478 patent, including any of the many

11   other compounds that FibroGen does not claim it invented, and 2) even if someone may have

12   separately invented the four overlapping compounds, that alone does not show that Liu did not

13   also invent them.  Motion at 30.[2]  The Court agrees with Defendants.

14         FibroGen alleges that Liu was not involved in conceiving or developing FibroGen

15   compounds.  Compl. ¶¶ 30-33, 79-80.  FibroGen argues that "the Complaint makes clear that Dr.

16   Liu would have been incapable of inventing such compounds and therefore could not plausibly

17   have contributed to the inventions claimed in the '478 patent."  Response (ECF 102) at 26.

18   However, the Complaint simply alleges that Liu did not invent the four FibroGen compounds

19   while working at FibroGen and was not involved in studies using the compounds.  Compl. ¶¶ 33,

20   80.  Nowhere does the Complaint allege that Liu was incapable of inventing these four

21   compounds, or that he did not contribute to any of the other patent inventions or compounds.

22   These allegations cannot support the inference that Liu did not contribute to any of the patent

23   inventions.  *See Hedrick*, 573 F.3d at 1297.

24

25   _____

26   [2] Defendants argue that FibroGen must allege misjoinder and nonjoinder by clear and convincing
     evidence.  Motion at 28.  That is incorrect.  Although FibroGen must ultimately prove the
     inventorship claims by clear and convincing evidence, *see Hedrick*, 573 F.3d at 1297, it need not

27   allege clear and convincing facts to survive a motion to dismiss.  *See generally Iqbal*, 556 U.S.
     662; *CODA*, 916 F.3d at 1359 ("[W]e conclude that Plaintiffs' correction-of-inventorship claims

28   are plausible.")

United States District Court
Northern District of California

United States District Court
Northern District of California

1      In *CODA*, the Federal Circuit found allegations of misjoinder plausible where the

2  defendants had previously failed to invent the technology, were eager to meet plaintiffs, had two

3  meetings with them, and took unauthorized photographs of plaintiff's functional prototype, in

4  addition to the suspicious timing of distancing themselves from plaintiff company and filing the

5  patent, and a "pointed accusation" from a former employee.  916 F.3d at 1359.  Similarly, the

6  district court in *Emergy Inc. v. The Better Meat Co.* found that the allegations supported a

7  reasonable inference that two doctors at Emergy conceived of the inventions, and not the "short-

8  term intern and research fellow" who lacked relevant training and experience.  No. 221-CV-

9  02417-KJMCKD, 2022 WL 7101973, at *5 (E.D. Cal. Oct. 12, 2022).  The *Emergy* court

10  considered that the research fellow contacted one of the doctor's twice offering services at no cost,

11  asked to become a one-third shareholder after less than a year of working with Emergy, abruptly

12  quit the fellowship when Emergy denied the request, and co-founded and became Chief

13  Technology Officer of Better Meat and filed a provisional patent application within four months.

14  *Id.*

15      By contrast, FibroGen makes only a conclusory assertion that Liu did not develop the four

16  HIF-PHI compounds developed in 2008, that he had access to the compound library, and three

17  years after Liu left FibroGen, Kind filed a patent application that listed four compounds that

18  FibroGen developed.  Compl. ¶¶ 7, 32, 33, 64.  This fails to plausibly allege that Liu did not

19  contribute to the inventions in the patents.  *See, e.g.*, *Iceotope Grp. Ltd. v. LiquidCool Sols., Inc.*,

20  No. 20-CV-2644 (WMW/JFD), 2022 WL 204923, at *4 (D. Minn. Jan. 24, 2022) (allegations that

21  the inventions were "actually invented by [plaintiffs], not by [defendants]" and that defendants had

22  knowledge of plaintiff's invention and technology were "insufficient to plausibly allege that the

23  named inventors, who are presumptively correct, did not contribute to conceiving the inventions").

24  Accordingly, taking all the allegations in the Complaint as true, FibroGen has not alleged facts to

25  overcome the presumption that the inventors in the patent are correct.  *See Hedrick*, 573 F.3d at

26  1297.

27      **2.  Nonjoinder**

28      FibroGen also alleges that Deng and Ho were improperly omitted from inventorship in the

United States District Court
Northern District of California

1    '478 patent.  Compl. ¶¶ 81-86.  Where, as here, a plaintiff alleges joint inventorship, the Court

2    conducts a two-part inquiry.[3]  First, the Court asks whether the allegations in the complaint "allow

3    the reasonable inference that [plaintiff] made a more-than-insignificant contribution to the

4    conception of at least one claim" of the patent.  *CODA*, 916 F.3d at 1359.  Second, the Court asks

5    whether the allegations in the complaint allow the reasonable inference that there was some

6    element of joint behavior, such as "collaboration or working under common direction."  *See*

7    *Kimberly-Clark Corp. v. Procter & Gamble Distrib. Co.*, 973 F.2d 911, 917 (Fed. Cir. 1992);

8    *CODA*, 916 F.3d at 1359-60.

9           Defendants argue that the nonjoinder claims fail because FibroGen has not alleged that

10   Deng and Ho collaborated with the six Kind inventors or made any contribution to the invention

11   on which Kind filed the 2018 patent.  Motion at 31.  Regarding the first part of the test, a joint

12   inventor "need not make the same type or amount of contribution to the invention nor contribute

13   to every claim – a contribution to one claim is enough."  *CODA*, 916 F.3d at 1358-59 (internal

14   quotation marks and citation omitted).  FibroGen alleges that Deng and Ho invented four of the 64

15   compounds claimed in claim 14.  Compl. ¶¶ 83-85.  Defendants do not argue that this was

16   insignificant, and the Court finds that these allegations may constitute a more-than-insignificant

17   contribution.  *See CODA*, 916 F.3d at 1358-59.  Thus, FibroGen's allegations regarding Deng and

18   Ho's contributions to the invention satisfy the first part of the nonjoinder test.

19          As for the second part of the test, joint inventorship "can only arise when collaboration or

20   concerted effort occurs – that is, when the inventors have some open line of communication during

21   or in temporal proximity to their inventive efforts."  *Eli Lilly & Co. v. Aradigm Corp.*, 376 F.3d

22   1352, 1359 (Fed. Cir. 2004) (noting collaboration is satisfied when, for example, one inventor sees

23   another's report "and build[s] upon it" or when one inventor "hear[s] another's suggestion at a

24   meeting" (quoting *Kimberly-Clark Corp.*, 973 F.2d at 917)).  Joint inventors need not physically

25   work together or at the same time or contribute to the subject matter of every claim of the patent.

26

27   _____

28   [3] FibroGen does not allege that Deng and Ho alone invented each of the 75 compounds in the '478
     patent, nor do they allege that the six additional Kind inventors were improperly named.

7

1    35 U.S.C. § 116.  Although the test is "not demanding," a plaintiff must still allege that the

2    individuals worked together in some capacity, or that an inventor used the other inventor's

3    materials.  *Intel Corp. v. Tela Innovations, Inc.*, No. 18-2848, 2019 WL 2476620, at *5 (N.D. Cal.

4    June 13, 2019) (citations omitted).  In *Intel Corp.*, for example, the plaintiff sufficiently alleged

5    collaboration where a team with an inventor interviewed Becker – the individual who patented the

6    technology – and Becker signed an NDA, was "informed in detail about [the company's]

7    technology at the meeting, including regular layout geometries with unidirectional gridded gate

8    and metal layers," and Becker indicated a lack of familiarity with gridded layout technology,

9    which he later incorporated into the patents.  2019 WL 2476620, at *6.  In *Emergy*, the court

10   found sufficient allegations of collaboration where the joint inventor "directly observed Emergy's

11   highly confidential and proprietary cultivation process and procedures," had full access to the

12   small laboratory room where Emergy conducted its confidential research and the "master

13   electronic lab notebook" where Emergy stored its trade secret information, lacked training in the

14   field, and filed a patent application within four months of leaving Emergy, which covered the

15   same harvesting methods and food products that the individual learned while conducting research

16   of Emergy.  2022 WL 7101973, at *5; *see also Imprenta Servs., Inc. v. Karll*, No.

17   220CV06177GWPVCX, 2021 WL 4555333, at *6-7 (C.D. Cal. July 13, 2021) (concluding that

18   plaintiffs adequately pleaded joint inventorship where the parties engaged in a mutual non-

19   disclosure agreement, and plaintiffs emailed defendant with a PDF attachment depicting changes

20   in the invention and sent defendant production level samples for testing, thus giving defendant

21   "the opportunity to study Plaintiffs' design and use it as the basis of the invention").  Here,

22   FibroGen makes no allegations as to the joint behavior or collaboration between inventors.

23   FibroGen contends that whether the six additional individuals invented the compounds in claim 14

24   or were correctly named as inventors is a factual dispute for the Court to decide after the record

25   has been developed through fact discovery.  Response at 24.  However, the Complaint contains no

26   factual allegations that Liu (or any of the other individuals) viewed or worked with Deng and Ho's

27   inventions.

28              The Complaint alleges that Liu was "aware of FibroGen's work with HIF-PHI

United States District Court
Northern District of California

1    compounds," had access to the compound library that contained thousands of compounds, and

2    attended project meetings where chemists presented work related to synthesizing HIF-PHI

3    compounds.  Compl. ¶¶ 5, 30-32.  However, FibroGen does not allege that any project meetings

4    involved the four compounds at issue.  These broad allegations about Liu's general awareness of

5    FibroGen's work with HIF-PHI compounds and access to the large database do not indicate that

6    Liu had any knowledge about the four overlapping compounds, accessed the compound library, or

7    lacked the requisite training or experience to conceive of these compounds.  Further, the

8    Complaint alleges only that Deng provided "assistance" and "confidential information" to Liu,

9    Compl. ¶¶ 8-9, but fails to include any factual allegations showing that Liu observed research or

10   learned about the specific compounds at issue or that any meetings, emails, or phone calls were

11   ever exchanged between Deng and Liu.  *Cf. CODA*, 916 F.3d at 1359 (inferring collaboration from

12   defendant's prior failures with the specific technology, two meetings between the companies

13   organized by defendant company, defendant's request to spend time alone with plaintiff's

14   functional prototype which defendant photographed without permission, email inquiry about the

15   status of plaintiff's technology in the month before defendant applied for a patent, and accusation

16   of theft from former employee).

17         FibroGen attempts to use the alleged theft of trade secrets to make misjoinder and

18   nonjoinder claims.  However, without factual allegations to support these claims, the claims do not

19   cross the requisite threshold.  Accordingly, the Court **DISMISSES** the misjoinder and nonjoinder

20   claims with leave to amend.

21       **B. Assignment Provision in Employment Agreements**

22         Defendants argue that the causes of action for declaration of patent ownership (count two),

23   breach of contract against Deng (count five), breach of implied covenant of good faith and fair

24   dealing against Deng (count six), inducing breach of Liu confidentiality agreement against Kind

25   (count seven), and inducing breach of Deng confidentiality agreement against Kind and Liu (count

26   eight) are based entirely on Defendants' alleged violation of their contractual obligations.  Motion

27

28

1    at 12-13.[4]  They contend that these causes of action should be dismissed because the assignment

2    provision in Defendants' Confidentiality Agreements violates California Business and Professions

3    Code Section 16600.  *Id.* at 13.  FibroGen does not contest that the challenged claims rely on the

4    validity of the assignment provision in the Agreements, but instead argues that the Agreements

5    comply with California law, and Section 16600 is not implicated because the inventions were

6    conceived during employment.  Response at 10-18.

7         **1.  California Law on Assignment Provisions**

8         California Business and Professions Code Section 16600 states that "every contract by

9    which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is

10   to that extent void."  Bus. & Prof. Code § 16600(a).  California courts have interpreted Section

11   16600 to advance the state's policy that "[a] former employee has the right to engage in a

12   competitive business for himself and to enter into competition with his former employer, even for

13   the business of . . . his former employer, provided such competition is fairly and legally

14   conducted."  *Reeves v. Hanlon*, 33 Cal. 4th 1140, 1149 (2004) (citation omitted).

15        The language of Section 16600 is "broad on its face."  *Ixchel Pharma, LLC v. Biogen, Inc.*,

16   9 Cal. 5th 1130, 1150 (2020).  Courts apply a "reasonableness standard to contractual restraints on

17   business operations and commercial dealings," but "strictly interpret[] section 16600 to invalidate

18   noncompetition agreements following the termination of employment."  *Id.* at 1159; *see*

19   *Whitewater W. Indus., Ltd. v. Alleshouse*, 981 F.3d 1045, 1053 (Fed. Cir. 2020) (explaining that

20   the California Supreme Court in *Ixchel* "emphasized just how 'strictly' § 16600 forbids

21   agreements that impair the post-employment liberty of former employees"); *Golden v. Cal.*

22   *Emergency Physicians Med. Grp.*, 896 F.3d 1018, 1024 (9th Cir. 2018) ("a contractual provision

23   imposes a restraint of a substantial character if it significantly or materially impedes a person's

24   lawful profession, trade, or business").  Indeed, "California's legislature has clearly expressed its

25

26   ───────────────────
27   [4] Defendants argue that the causes of action for breach of contract against Liu (count three) and
     breach of implied covenant of good faith and fair dealing against Liu (count four) are based in part
     on that ground, and in part on the failure to inform FibroGen about the founding of Kind.  *Id.* at
28   13.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    disapproval of contracts that restrain lawful business and professional activities," and "it will be

2    the rare contractual restraint whose effect is so insubstantial that it escapes scrutiny under section

3    16600." *Golden*, 896 F.3d at 1024.  Section 16600 prohibits contracts requiring assignments of

4    inventions conceived after employment, except to the extent necessary to protect an employer's

5    trade secrets.  *Whitewater*, 981 F.3d at 1054-55.

6         **2. Analysis**

7         Defendants assert that the Agreement defines "inventions" more broadly than Section

8    16600 permits because the assignment clause (1) extends past employment and (2) is not limited

9    to inventions based on the former employer's confidential information.  Motion at 12-19.  They

10   argue that the first and third subclauses of the assignment provision (drafted in the disjunctive)

11   violate Section 16600.  *Id.*  The Court first assesses whether the assignment clause extends beyond

12   the term of employment.

13        Section 16600 applies to "contracts requiring assignments of rights in inventions conceived

14   *after employment*."  *Whitewater*, 981 F.3d at 1054-55 (emphasis added).  Assignment clauses are

15   "unlawful non-compete provisions where they require an employee to assign an invention

16   conceived after departing from an employer's service."  *Applied Materials, Inc. v. Advanced*

17   *Micro-Fabrication Equip. (Shanghai) Co.*, 630 F. Supp. 2d 1084, 1086, 1090 (N.D. Cal. 2009)

18   ("*Applied Materials I*") (finding assignment provision invalid where it required assignment of

19   inventions "described in a patent application or . . . disclosed . . . within one (1) year after

20   terminating my employment" based on a presumption "that the invention was conceived or made

21   during the period of [the] employment").

22        Here, subclause one of the confidentiality agreements requires assignment of all ideas,

23   concepts, and inventions:

24        [R]esulting from work performed by Employee for the Company, performed during
         Employee's regular working hours, utilizing equipment, supplies, facilities, or
25        CONFIDENTIAL INFORMATION of the Company, which (i) relate to the actual
         or demonstrably anticipated research or development of the Company.
26

27   Agreement § 1(b).  Defendants argue that the first subclause is unlimited in time and captures

28   inventions not based on confidential information.  Motion at 17.  The Court agrees.

11

United States District Court
Northern District of California

1    The first subclause requires assignment of inventions "resulting from work" performed for

2    FibroGen and which "relate to" the company's research or development.  This does not limit

3    assignment to inventions conceived of during employment or based on confidential information.

4    *See, e.g.*, *Applied Materials I*, 630 F. Supp. 2d at 1090 (concluding that a clause requiring

5    assignment of "any invention disclosed within one year of terminating employment . . . provided

6    the invention relates to work the employee performed for [company]" impermissibly encompassed

7    "both inventions based on confidential employer information and inventions relating to former

8    [company] employees' work in the broad field of semiconductor research and manufacturing");

9    *Conversion Logic, Inc. v. Measured, Inc.*, No. 2:19-CV-05546, 2019 WL 6828283, at *6-7 (C.D.

10   Cal. Dec. 13, 2019) (invalidating under Section 16600 a provision requiring assignment of "all

11   Inventions . . . conceived or developed by Employee while employed with the Company or within

12   one (1) year following termination of such employment which relate to or result from the actual or

13   anticipated business, work, research or investigation of the Company" as overbroadly extending

14   beyond the term of employment and "sweeping up inventions and discoveries unrelated" to the

15   companies' proprietary information).

16   Additionally, the first subclause contains no temporal limitation limiting assignment to

17   inventions conceived of while an employee remains employed at FibroGen.  As in *Applied I* and

18   *Conversion Logic*, the first subclause here requires assignment of inventions related to FibroGen's

19   research or development beyond the term of employment, and regardless of whether they are

20   based on confidential information.  Agreement § 1(b); *see, e.g.*, *Applied Materials, Inc. v.*

21   *Demaray LLC*, No. 5:20-CV-09341-EJD, 2021 WL 4222177, at *11 (N.D. Cal. Sept. 16, 2021)

22   ("*Applied Materials II*") (invalidating same clause as *Applied I* as it included "broad language

23   sweeping up inventions and discoveries unrelated to [the company's] proprietary information.").

24   Consequently, the first subclause violates Section 16600 as it requires assignment of rights in

25   inventions conceived after employment.

26   Further, when read as part of the whole agreement, the first subclause is most naturally

27   read to broadly encompass post-employment inventions.  The second subclause of the assignment

28   provision explicitly limits assignment to inventions "made or conceived or reduced to practice . . .

12

1    during . . . Employee's employment as the Company."  Agreement § 1(b).  Because this language

2    was included in the second subclause but not the first, the first subclause sweeps more broadly,

3    and the Court cannot agree with FibroGen that such language can be read into the first subclause.

4    *See Walt Disney Parks & Resorts U.S., Inc. v. Superior Ct.*, 21 Cal. App. 5th 872, 879 (2018)

5    ("Where, as here, the Legislature has chosen to include a phrase in one provision of the statutory

6    scheme, but to omit it in another provision, we presume that the Legislature did not intend the

7    language included in the first to be read into the second.").  Indeed, to the extent FibroGen argues

8    that the contract could be read to limit assignment to inventions conceived of during employment,

9    "ambiguous contract provisions should be construed against the drafter."  *Int'l Bhd. of Teamsters*

10   *v. NASA Servs., Inc.*, 957 F.3d 1038, 1042 (9th Cir. 2020); *see Jacobs v. Freeman*, 104 Cal. App.

11   3d 177, 189 (1980).

12           FibroGen argues that the first subsection does not extend beyond the term of employment

13   because it adopts a carveout to Section 2870 of the labor code.  Response at 15.  California Labor

14   Code Section 2870 prevents employees from requiring assignment of rights to an invention

15   "developed entirely on [the employee's] own time without using the employer's equipment,

16   supplies, facilities, or trade secret information," except for inventions that:

17           (1) Relate at the time of conception or reduction to practice of the invention to
18           the employer's business, or actual or demonstrably anticipated research or
             development of the employer; or

19
             (2) Result from any work performed by the employee for the employer.
20

21   Cal. Labor Code § 2870(a).

22           FibroGen asserts that because the first subclause copies language from Section 2870(a),

23   and Section 2870(a) can only be read to apply during the term of employment, the subclause limits

24   assignment of inventions conceived of during employment.  Response at 15-16.  However,

25   nothing in the text of Section 2870 permits assignment of post-employment inventions or

26   supersedes the requirements of Section 16600.  Indeed, this interpretation of these California laws

27   has already been rejected.  *See Whitewater*, 981 F.3d at 1057.  In *Whitewater*, the Federal Circuit

28   explicitly "reject[ed] [the] premise that § 2870(a) clearly covers, and through its exceptions clearly

United States District Court
Northern District of California

United States District Court
Northern District of California

1    approves, an agreement requiring assignment of post-employment inventions." *Id.*  The court held

2    that "[Section] 2870(a) does not clearly cover agreements requiring assignments of post-

3    employment inventions." *Id.*  The *Whitewater* court reasoned that Section 2870(a) "does not

4    apply to post-employment inventions, much less affirmatively authorize all agreements that

5    require assignment of post-employment inventions as long as they meet the 'except for' criteria,

6    regardless of other characteristics, such as the absence of any temporal limit on the contractual

7    assignment duty." *Id.* at 1057-58.  Therefore, even though the language in subclause (i) of the

8    assignment provision at issue in this case tracks the language in Section 2870(a)(1), the provision

9    remains invalid, as it fails to include a temporal limitation.

10        Because the contract requires assignment of post-employment inventions, regardless of

11   whether they are based on confidential material, the Court finds that the assignment clause violates

12   Business and Professions Code Section 16600 and is an unlawful non-compete provision.  *See*

13   *Golden*, 896 F.3d at 1024 (an assignment provision "need not completely prohibit the business or

14   professional activity at issue, nor does it need to be sufficient to dissuade a reasonable person from

15   engaging in that activity;" instead, its enforcement must "implicate the policies of open

16   competition and employee mobility.").  As such, it is void under California law.  Because the

17   Court finds that the first subsection is void, it need not consider Defendants' arguments that the

18   third subsection violates Section 16600.[5]

19       **C. Declaration of Patent Ownership (Count II)**

20       FibroGen seeks a declaration against Kind and Liu that it is "the true and lawful owner of

21   the entire right, title, and interest in and to the Kind Patents."  Compl. ¶¶ 91-94.  To be entitled to

22   such a declaration, FibroGen must "produce a written instrument documenting the transfer of

23

24   [5] Defendants persuasively argue that the Court should not rewrite the provision to rescue it
     because it would incentivize employers to draft broad, illegal assignment clauses knowing that the
25   worst-case scenario would be that the Court would narrow the language.  Motion at 19; *see*
     *Applied Materials II*, 2021 WL 4222177, at *11; *Dowell v. Biosense Webster, Inc.*, 179 Cal. App.
26   4th 564, 579 (2009).  Plaintiffs do not argue that the Court should re-write the assignment clause,
     and the Court will not do so here.  *See Arthur J. Gallagher & Co. v. Tarantino*, 498 F. Supp. 3d
27   1155, 1169-70 (N.D. Cal. 2020) (declining to rewrite overbroad noncompete clause to save illegal
     contract).
28

14

United States District Court
Northern District of California

1    proprietary rights in the patents." *Speedplay, Inc. v. Bebop, Inc.*, 211 F.3d 1245, 1250 (Fed. Cir.

2    2000). FibroGen contends that the assignment provision in Liu's Confidentiality Agreement is

3    such a written instrument. Response at 9. However, because the Court finds that the assignment

4    provision in the Agreement invalid, the contract cannot support a patent ownership claim.

5    FibroGen has offered nothing else. Accordingly, FibroGen has not alleged that it is entitled to the

6    declaration it seeks and the Court **DISMISSES** without leave to amend. *See Serra v. Lappin*, 600

7    F.3d 1191, 1200 (9th Cir. 2010) (amendment would be futile).

8        **D. Breach of Confidentiality Provisions (Counts III-VIII)**

9            Defendants move to dismiss counts three through eight, arguing that they lack any other

10   viable basis other than the assignment provision. Motion at 21. Specifically, they contend 1) Liu

11   did not breach his Confidentiality Agreement by founding Kind or failing to inform the Board of

12   this outside employment, and that there are insufficient allegations regarding his use of

13   confidential material; and 2) Deng did not breach his Confidentiality Agreement as there are no

14   factual allegations that he provided Liu or Kind with confidential material. FibroGen's

15   Confidentiality Agreement prohibits employees from engaging in any outside company "in the

16   business of manufacturing, selling or distributing products in competition with the products and/or

17   services of the Company[.] . . ." Agreement § 10. The Agreement requires the employee to

18   "furnish to the Board of Directors of the Company a detailed statement of any outside employment

19   or consulting services in which Employee seeks to engage or invest, and, as from time to time

20   requested by said Board, resubmit for approval a detailed statement thereof." *Id.* Finally, the

21   employee may not perform any act "which may confer any competitive benefit or advantage upon

22   any enterprise competing with the Company[.] . . ." *Id.*; Compl. ¶ 38.

23       **1. Breach of Contract and Covenant of Good Faith and Fair Dealing Claims Against**

24          **Liu (Counts 3-4)**

25           Defendants argue that FibroGen fails to allege breach of any contractual provision.[6]

26   _____

27   [6] Defendants also argue that if the assignment clause is invalid, the compounds are not
     FibroGen's, and no breach could have occurred. Reply (ECF 99) at 14. However, regardless of
28   whether the inventions were assigned to FibroGen, the Complaint alleges that the compounds are
     confidential information, and thus may not be disclosed. *See* Compl. ¶ 109; Agreement § 1(a)

United States District Court
Northern District of California

1    FibroGen counters that Liu breached additional provisions of the Agreement by 1) founding Kind

2    before leaving FibroGen, 2) failing to provide a statement of outside employment to the Board,

3    and 3) failing to return confidential material at the end of employment.  Response at 19-23.  The

4    Court addresses each in turn.

5                              **a.  Founding Kind Entities**

6            FibroGen argues that Liu conferred a competitive advantage on the Kind entities by

7    founding Kind prior to leaving FibroGen.  Response at 21-22.  Liu argues that he did not breach

8    the contract or implied covenant by merely founding the company, emphasizing that he did not

9    engage in any competitive activity while employed at FibroGen.  Motion at 25-26.

10           Both parties rely on *Mamou v. Trendwest Resorts, Inc.*, 165 Cal. App. 4th 686, 719 (2008).

11   In *Mamou*, the court held that "an employee's mere formation of a potentially competing

12   corporation does not breach a duty to his employer."  *Id.*  Indeed, "[a]n employee does not breach

13   his duty of loyalty by *preparing* to compete with his employer."  *Id.* (emphasis in original); *see*

14   *Fowler v. Varian Assocs., Inc.*, 196 Cal. App. 3d 34, 41 (1987) ("California law does permit an

15   employee to seek other employment and even to make some 'preparations to compete' before

16   resigning [but] . . . does not authorize an employee to transfer his loyalty to a competitor")

17   (citation omitted).

18           FibroGen alleges that Liu's actions were more than mere "preparations" as he founded and

19   incorporated Kind and named himself CEO, plus he founded Hangzhou Andao Pharmaceutical

20   and became Chairman, CEO, and General Manager before leaving FibroGen.  Compl. ¶¶ 7, 56, 57,

21   102, 103.  However, FibroGen's Complaint contains no allegations that Liu, Kind, or Hangzhou

22   engaged in any activity, much less any competitive activities, prior to Liu leaving FibroGen in

23   May of 2015.  Without allegations of any actions taken by Liu or the Kind entities during Liu's

24   employment, FibroGen's claim that Liu breached the contract merely by founding the companies

25   fails.  *See* Compl. ¶¶ 7, 56-57, 102-03; *Mamou*, 165 Cal. App. 4th at 719.

26           FibroGen also argues that Liu conferred a competitive advantage on the Kind entities by

27   _____

28   (defining "confidential information").

16

United States District Court
Northern District of California

1    founding them prior to leaving FibroGen, and because these companies compete with FibroGen by

2    focusing on HIF-PFI development and anemia treatment.  Response at 21-22; Compl. ¶¶ 2, 58.

3    Again, the Complaint does not allege that these companies conducted any business at all, much

4    less worked on HIF-PHI compounds prior to Liu leaving FibroGen.  Instead, the Complaint refers

5    to Kind currently being a competitor.  *See* Compl. ¶¶ 7, 58, 63 (Kind "intends for its AND017

6    compound to compete with FibroGen's Roxadustat product once commercially available").

7    Because FibroGen has not alleged that Liu engaged in any business competing with FibroGen

8    prior to leaving, it fails to state a claim.

9                    **b.  Statement of Outside Employment**

10           The clear language of the Agreement states: "during the term of his or her employment,"

11   the employee "shall furnish the Board of Directors of the Company a detailed statement of any

12   outside employment . . . in which Employee seeks to engage or invest, and, as from time to time

13   requested by said Board, resubmit for approval a detailed statement thereof."  Agreement § 10.

14   Defendants argue that this provision only required them to submit such a statement at the start of

15   their employment.  Motion at 26-27.  They assert that reading the provision to require a continuing

16   duty to disclose outside business would render null the clause permitting the Board to request

17   statements "from time to time," as employees would be required to submit these statements

18   whenever applicable.  Motion at 26-27.  The Court cannot agree. The paragraph discussing

19   conflicting employment obligations refers to an employee's duties "during the term of his or her

20   employment."  Agreement § 10.  Accordingly, Plaintiffs make a plausible allegation that Liu

21   breached the contract by failing to provide a detailed statement of the outside employment in

22   which he sought to engage.

23                    **c.  Failure to Return Confidential Material**

24           FibroGen alleges that Liu failed to keep confidential and return information on FibroGen's

25   four proprietary compounds upon the termination of his employment.  Compl. ¶¶ 31-33, 64-69,

26   109, 117.  However, beyond alleging Liu's awareness of the existence of proprietary compounds,

27   his access to the FibroGen library, and the overlapping compounds in the Kind patent, the

28   Complaint fails to provide any factual support for the assertion that Liu removed or failed to return

17

United States District Court
Northern District of California

1   confidential information.  In fact, FibroGen admits that Liu was not involved in pharmacology

2   studies using FibroGen's proprietary HIF-PHI compounds.  *Id.* ¶¶ 79-80.  The Complaint does not

3   allege that Liu ever accessed the compound library or obtained any information about the structure

4   of FibroGen's compounds, and there are no allegations of any emails, phone calls, or meetings

5   where Liu requested or received confidential information.  Accordingly, FibroGen has failed to

6   state a claim for breach of contract under this theory.

7          **2.   Breach of Contract and Covenant of Good Faith and Fair Dealing Against Deng**

8                 **(Counts V and VI)**

9          FibroGen alleges that Deng was one of the two true inventors of FibroGen's proprietary

10  compounds, and "conveyed [confidential] information concerning FibroGen's proprietary HIF-

11  PHI compounds" to Kind and Liu.  Compl. ¶¶ 81, 126, 131.  However, as discussed above with

12  respect to the allegations against Liu, the Complaint contains no allegations to support the

13  conclusion that Deng conveyed FibroGen's confidential information to Kind or Liu.  There are no

14  factual allegations that Deng communicated, downloaded, removed, or transferred information in

15  an unauthorized manner.  Instead, this cause of action relies on the existence of a four-compound

16  overlap with compounds over a decade old, and Deng joining Kind after Kind patented its

17  technology.  Conclusory assertions that Deng provided confidential material to Liu cannot survive

18  a motion to dismiss.  *See Twombly*, 550 U.S. at 556-57.

19         **3.   Breach of Implied Covenant of Good Faith and Fair Dealing (Counts IV and VI)**

20         Defendants argue that the claims of breach of implied covenant of good faith and fair

21  dealing also fail as they are based on the same alleged contractual violations as the breach of

22  contract claims.  Motion at 27 (comparing Compl. ¶¶ 109 and 131 (Counts III and V) with ¶¶ 117

23  and 139 (Counts IV and VI)).  FibroGen counters that these allegations rest on Liu and Deng

24  "actively distributing FibroGen's proprietary information to Kind and knowingly publishing this

25  information" in the WO'928 application, '478 patent and '362 patent application.  Response at 23.

26         "There is implied in every contract a covenant by each party not to do anything which will

27  deprive the other parties thereto of the benefits of the contract."  *Harm v. Frasher*, 181 Cal. App.

28  2d 405, 417 (1960).  A " 'breach of a specific provision of the contract is not . . .  necessary' to a

18

1    claim for breach of the implied covenant of good faith and fair dealing." *Thrifty Payless, Inc. v.*

2    *The Americana at Brand, LLC*, 218 Cal. App. 4th 1230, 1244 (2013) (citing *Carma Developers*

3    *(Cal.), Inc. v. Marathon Dev. Cal., Inc.*, 2 Cal. 4th 342, 373 (1992)).  However, "[i]f the

4    allegations in a breach of implied covenant claim 'do not go beyond the statement of a mere

5    contract breach and, relying on the same alleged acts, simply seek the same damages or other

6    relief already claimed in a companion contract cause of action, they may be disregarded as

7    superfluous as no additional claim is actually stated.' " *Malcolm v. JPMorgan Chase Bank, N.A.*,

8    No. 09-4496-JF (PVT), 2010 WL 934252, at *6 (N.D. Cal. Mar. 15, 2010) (citing *Careau & Co. v.*

9    *Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1395 (1990)); *Woods v. Google, Inc.*, No.

10   5:11-CV-01263-EJD, 2017 WL 4310765, at *2 (N.D. Cal. Sept. 28, 2017) (same); *see also Kaar*

11   *v. Wells Fargo Bank, N.A.*, No. C 16-01290 WHA, 2016 WL 3068396, at *2 (N.D. Cal. June 1,

12   2016) (citing *California Shopper, Inc. v. Royal Globe Ins. Co.*, 175 Cal. App. 3d 1, 54 (1985))

13   ("[T]he authorities hold that breach of the implied covenant of good faith and fair dealing involves

14   something beyond breach of the contractual duty itself").

15          The allegations in the breach of covenant of good faith and fair dealing are the same as

16   those in the breach of contract claims.  Accordingly, the Court dismisses these claims with leave

17   to amend.

18          **E.  Inducing Breach (Counts VII and VIII)**

19          Defendants argue that counts seven and eight for inducing breach of the confidentiality

20   agreement fail as they are based on an invalid assignment clause.  As noted above, the Court

21   agrees with Defendants that the assignment clause is invalid.  A cause of action for inducing

22   breach requires showing that Defendants took "intentional acts design to induce a breach of

23   disruption of the contractual relationship." *Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal.

24   3d 1118, 1126 (1990); *see Jenni Rivera Enterprises, LLC v. Latin World Ent. Holdings, Inc.*, 36

25   Cal. App. 5th 766, 782 (2019).  These claims fail because the Complaint contains no factual

26   allegations as to what conduct Kind took to induce the breach of the confidentiality agreement.

27   Accordingly, the Court dismisses counts seven and eight.

28   ///

United States District Court
Northern District of California

19

**IV.  CONCLUSION**

For the foregoing reasons, the Court **DISMISSES** count one **with leave to amend**.  The Court **DISMISSES** count two **without leave to amend**.  The Court **DENIES** the motion to dismiss the breach of contract claim based on the allegations that Liu failed to inform FibroGen's board about his outside employment.  The Court finds that the assignment provision is void under California Business and Professions Code Section 16600.  The Court **DISMISSES** the remaining counts with **leave to amend** based on allegations that do not involve the invalid assignment provision.  FibroGen's amended complaint must be filed by **April 19, 2024**.  No additional parties or claims may be added without leave of Court or stipulation of Defendants.

The Court **TERMINATES** Defendants' motion for sanctions.  ECF 78, 100.  Now that the parties have the benefit of the Court's decision on the motion to dismiss, if Defendants would like to pursue their motion for sanctions, they may re-file it within **7 days** from this Court's order.  Plaintiffs shall **FILE** any opposition to the motion for sanctions within **14 days** from Defendants' filing.  The Court also **DENIES AS MOOT** Defendants' administrative motion for leave to file a statement of recent decision and statutory authority.  ECF 105.

**IT IS SO ORDERED.**

Dated: March 20, 2024

**ARACELI MARTÍNEZ-OLGUÍN**
**United States District Judge**

United States District Court
Northern District of California

20